UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 08-161-GWU

CARSON WHITEHEAD,                                                    PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                      DEFENDANT.

### INTRODUCTION

Carson Whitehead brought this action to obtain judicial review of an unfavorable administrative decision on his applications for Disability Insurance Benefits and for Supplemental Security Income.  The case is before the court on cross-motions for summary judgment.

### APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1.    Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2.    If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities?  If not, a finding of non-disability is made and the claim is denied.

3.    The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of

1

impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.    At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.    If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.

1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir.

1997).

    Review of the Commissioner's decision is limited in scope to determining

whether the findings of fact made are supported by substantial evidence.  Jones v.

Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir.

1991).  This "substantial evidence" is "such evidence as a reasonable mind shall

accept as adequate to support a conclusion;" it is based on the record as a whole

and must take into account whatever in the record fairly detracts from its weight.

Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

08-161  Carson Whitehead

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting

most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert

08-161  Carson Whitehead

accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v.</u>
<u>Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

### DISCUSSION

The Administrative Law Judge (ALJ) concluded that Whitehead, a 54-year-old former janitor and school bus driver with a "limited" education, suffered from impairments related to chronic low back pain, cirrhosis, hypertension, chronic obstructive pulmonary disease, and an anxiety-related disorder.  (Tr. 14, 18).  As of August 16, 2007, the plaintiff was found to be totally disabled.  (Tr. 19).  Prior to this date, the ALJ determined that the claimant could not return to his past relevant work but retained the residual functional capacity to perform a restricted range of light level work.  (Tr. 15-16, 18).  Since the available work was found to constitute a significant number of jobs in the national economy, Whitehead could not be considered totally disabled during this time period.  (Tr. 20).  The ALJ based this portion of the administrative decision, in large part, upon the testimony of a vocational expert.  (Tr. 19).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question initially presented to Vocational Expert Katherine Bradford included an exertional limitation to light level work restricted from a full range by such non-exertional restrictions as an inability to more than occasionally

stoop, kneel, crouch or crawl and  a "moderate" limitation of ability to respond to work pressures.  (Tr. 51-52).  In response, Bradford identified a significant number of jobs in the national economy which could still be performed.  (Tr. 52).  The ALJ then added restrictions concerning a need to avoid exposure to temperature extremes, humidity and concentrated pulmonary irritants.  (Id.).  The witness testified that some reduction in job numbers would occur but that a significant number of jobs would still remain.  (Id.).  The ALJ then included limitations regarding a need to avoid highly pressured work such as production rate work,  a "moderately" limited ability to respond to changes in the work setting and "moderately" limited ability to complete a normal workday or workweek without interruption from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  (Tr. 52-53).  Once again, a significant number of jobs were identified as remaining available to such a person. (Tr. 53).  The job numbers would again be reduced but a significant number would remain.  (Id.).  Therefore, assuming that the vocational factors considered by Bradford fairly characterized the plaintiff's condition during the relevant period, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

With regard to the framing of the physical factors of the hypothetical question, the undersigned finds no error.  Whitehead was found capable of performing a restricted range of light level work in an administrative decision which

became final on July 25, 2005.  (Tr. 74-82).  Among the physical limitations noted by the ALJ were an exertional restriction to light level work reduced from a full range by such non-exertional limitations as an inability to more than occasionally stoop, kneel, crouch and crawl.  (Tr. 81).  Principles of *res judicata* require that the administration be bound by this decision unless a change of circumstances is proved upon a subsequent application.  Drummond v. Commissioner of Social Security, 126 F.3d 837, 842 (6th Cir. 1997).  Acquiescence Ruling 98-4(6) instructs that the agency "must adopt  [the residual functional capacity finding] from a final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated time period unless there is new material evidence relating to such a finding . . . ."  The ALJ's findings of a restricted range of light level work are in accord with these directives.

Dr. David Swan (Tr. 421-428) and Dr. Sudhideb Mukherjee (Tr. 462-469) each reviewed the current record and found that Whitehead's condition had not deteriorated since the prior administrative denial decision.  Each reviewer imposed the same physical restrictions as were found in the prior opinion.  These opinions support the administrative decision.

Dr. Barry Burchett examined Whitehead in October of 2006.  Upon physical examination, the plaintiff was noted to ambulate with a normal gait and to be comfortable both sitting and supine.  (Tr. 375).  Range of back motion was normal.  (Tr. 377).   Lung fields were clear to auscultation and percussion with no sign of

wheezes, rales or rhonchi.  (Tr. 376).   The heart had a regular rate and rhythm. (Id.).  There was no sign of peripheral vascular insufficiency.  (Id.).  Examination of the dorsolumbar spine revealed no sign of muscle spasm.  (Id.).  Dr. Burchett found no sign of muscle atrophy and sensory modalities were intact.  (Tr. 377).  A diagnostic  impression of cirrhosis, degenerative disc disease of the lumbar spine without radiculopathy, hypertension, and history of alcohol dependence was noted. (Id.).   The examiner's report does not suggest deterioration in the claimant's condition since the prior denial decision and, so, supports the current administrative decision.

Dr. Roy Varghese, a treating source, identified a number of physical restrictions in a Medical Source Statement, including a limitation of ability  to stand or walk for less than two hours a day, an inability to sit for more than four hours a day and a need to sit or stand at will.  (Tr. 479-481).  When Dr. Varghese's restrictions were presented to the vocational expert she could not identify any jobs as remaining available.  (Tr. 54-55).  The ALJ rejected the doctor's opinion as binding  because he did not believe that it was well-supported by objective medical data.  (Tr. 18).  The plaintiff asserts that this action was erroneous.  However, as noted by the ALJ, treatment records do not support such restrictions.  (Id.).  Dr. Varghese indicated that his blood pressure was controlled in July of 2005.  (Tr. 363).  Dr. Ferdousi Begum, a colleague of Dr. Varghese at the Anne Wasson Rural Health Center,  reported in September of 2005 that the patient's blood pressure was

well controlled despite his having run out of medication.  (Tr. 364).  The claimant's overall condition was described as "fine."  (Id.).  In January of 2006, Dr. Varghese reported that Whitehead was doing well with his blood pressure well controlled.  (Tr. 367).  In March, 2006, Dr. Varghese noted the plaintiff's cirrhosis, blood pressure and asthma to be controlled.  (Tr. 368).  The patient was noted to be doing well. (Id.).  In November of 2006, the claimant's blood pressure was controlled and no changes were found in his extremities.  (Tr. 437).  In April of 2007, Whitehead's extremities and cardiovascular status were reported to be normal.  (Tr. 496).  In October, 2007, the plaintiff was once more noted to be doing "fine" with his overall condition and his blood pressure was well controlled.  (Tr. 484).  Therefore, the treating records clearly do not indicate deterioration in the claimant's condition since the prior denial decision and the ALJ had good reasons to reject Dr. Varghese's opinion as binding.

The ALJ also dealt properly with the evidence of record relating to Whitehead's mental condition.  In the prior denial decision, the ALJ found no more than "mild" restriction with regard to detailed instructions and interactions with the public, supervisors or co-workers, and responding appropriately to changes in the work setting as well as a "moderately" limited ability to respond to work pressures. (Tr. 81).   A significant number of jobs were found available to one so afflicted.  (Tr. 80).  In the present action, Psychologist Jan Jacobson, an agency medical reviewer, found that no new evidence existed to change this finding.  (Tr. 405).  This opinion

11

was affirmed by Psychologist Ilze Sillers, another reviewer.  (Tr. 446).   The examiners each also noted a "moderate" limitation of ability to complete a normal workday and workweek without interruption from psychologically-based symptoms and to perform at a consistent pace without an unreasonable length and number of rest periods and a "moderate" limitation of ability to respond appropriately to changes in the work setting. (Tr. 404, 445).  These restrictions were considered by the current vocational expert who indicated that a significant number of jobs could be performed.

Whitehead argues that the ALJ erred in rejecting the opinion of Psychologist Syed Raza, an examining consultant.  Raza indicated that the plaintiff would be unable to complete tasks in a normal amount of time and would have a "poor" ability to deal with supervisors and the public.  (Tr. 388).  The ALJ noted that these restrictions were inconsistent with the Global Assessment of Functioning (GAF) rating of 58 (Tr. 387) which the examiner noted since such a GAF would indicate no more than "moderate" psychological symptoms (Tr. 18).  Such a GAF rating would not suggest deterioration in the claimant's condition since the prior denial decision. (Id.).  The court further notes that Raza related his restrictions at least in part to the plaintiff's complaints of back pain, a physical problem outside his area of expertise. Therefore, under these circumstances, the ALJ properly rejected the opinion of Raza as binding.

08-161  Carson Whitehead

Whitehead argues that the ALJ erred by failing to cite specific reasons for his credibility finding.  However, the ALJ noted a number of reasons for this finding including the numerous reports that the plaintiff's hypertension was well-controlled, the lack of either outpatient counseling or use of medication for his mental problems, and his daily activities which included yard work, shopping, daily walks, and fishing.  (Tr. 18-19).  Therefore, the court finds that the ALJ cited a number of good reasons for his credibility determination and must reject the claimant's argument.

The undersigned concludes that the administrative decision should be affirmed.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 3rd day of February, 2010.

**Signed By:**

_G. Wix Unthank_

**United States Senior Judge**

13